UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN GRESCHNER, | No. 2:15-cv-1663 AC P |
| Plaintiff, | |
| v. | ORDER and |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al., | FINDINGS AND RECOMMENDATIONS |
| Defendants. | |

**I.      Introduction**

Plaintiff is a former California state prisoner, currently incarcerated in Colorado, who proceeds pro se and in forma pauperis with this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff proceeds with a First Amended Complaint (FAC), filed April 22, 2019, which the court now screens pursuant to 28 U.S.C. § 1915A.

This action is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c). For the reasons that follow, this court finds that this action should proceed on plaintiff's FAC against defendants Rolfing, Syverson, Schwartz and Banner-Lassen Medical Center. The court recommends the dismissal of defendant Secretary of the California Department of Corrections and Rehabilitation. Plaintiff is directed to submit the information necessary for the United States Marshal to serve process on the defendants against

1

whom this case proceeds.

**II.     Background**

Originally filed in 2015, this case was transferred on August 6, 2018 to the U.S. District Court for the Southern District of Ohio, along with several other cases throughout the United States for consolidation in Multidistrict Litigation Case No. 2846 ("In re: Davol, Inc. / C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation").  See ECF No. 11.

By order filed March 13, 2019, the Multidistrict Panel severed plaintiff's product liability claims against Davol and Bard from his other claims, as set forth in his original complaint, and remanded the latter claims back to this court.  See ECF No. 12 at 1.  Specifically, the Panel found "[i]t appears that plaintiff has asserted two sets of claims in this action:  (1) product liability claims against defendants C.R. Bard, Inc., and Davol, Inc., for defective surgical hernia mesh; and (2) claims against other defendants, including constitutional law violations pursuant to 42 U.S.C. § 1983, negligence under California Civil Code §1714(a), and medical malpractice pursuant to California Civil Code § 1714(a)."  Id.  Accordingly, the Panel ordered that "all claims filed against any defendant other than C.R. Bard, Inc., and Davol, Inc., are separated and remanded to the transferor court."  Id.  Thereafter, plaintiff filed the operative FAC.

**III.     Screening of Plaintiff's First Amended Complaint**

**A.     Legal Standards for Screening Prisoner Civil Rights Complaint**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).

Rule 8 of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair

2

notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it

demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly at 555). To survive dismissal for failure to

state a claim, "a complaint must contain sufficient factual matter, accepted as true, to "state a

claim to relief that is plausible on its face.'" Iqbal at 678 (quoting Twombly at 570). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged. The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility

that a defendant has acted unlawfully." Id. (citing Twombly at 556). "Where a complaint pleads

facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between

possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly at 557).

        "A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however

inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by

lawyers. '" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97,

106 (1976) (internal quotation marks omitted)). See also Fed. R. Civ. P. 8(e) ("Pleadings shall be

so construed as to do justice."). Additionally, a pro se litigant is entitled to notice of the

deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies

cannot be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

### B.    Plaintiff's Allegations

        As set forth in the FAC, plaintiff alleges that while he was incarcerated at High Desert

State Prison (HDSP), he obtained hernia repair surgery at defendant Banner Lassen Medical

Center (Banner), which included the implantation of a Davol-Bard hernia plug and mesh into his

abdomen. Plaintiff alleges that Banner physician Dr. Dale L. Syverson recommended to plaintiff

that he have the surgery and "signed a contract with plaintiff" to perform the surgery. ECF No.

15 at 8. Banner physician Dr. Arthur A. Schwartz performed the surgery. Plaintiff alleges that

both physicians "knew or should have known" that the subject device was "defective &

3

dangerous," and that Dr. Schwartz further failed to ensure that the device "was safe, sterile, and properly implanted in plaintiff" instead of "contaminated with bacteria." Id.

Defendant Dr. Jeffrey Rolfing, a CDCR physician at HDSP, provided plaintiff's aftercare. Plaintiff alleges that upon his return to HDSP after surgery, Dr. Rolfing "was deliberately indifferent to my serious medical needs when he refused to change my filthy dressings." ECF No. 15 at 5. Plaintiff alleges that his surgical site became infected as a result of the allegedly defective hernia mesh, yet Dr. Rolfing refused to treat it, "making plaintiff change dressings and do self care due to no alternative." Id. More specifically, plaintiff alleges, id. (with minor edits):

> Doctor Rolfing stated to plaintiff: We don't change the dressings. We let them fall off on their own. This was after plaintiff told Dr. Rolfing that plaintiff was forced to put toilet paper over the open stomach wound which was oozing infectious pus, as the original surgical dressing was filled with infected pus. Plaintiff knew that he wasn't going to receive any help from Dr. Rolfing, so he told him to give plaintiff dressing so he could self care. This caused the infection to rage in plaintiff for 6-8 months, and the surgical incision site would not close for over 90 days. This caused permanent nerve & tissue damages, pain and suffering. . . . chronic, intractable pain & suffering, requiring life long pain medications, which is worsening as time passes. Plaintiff suffers from mental pain & emotional suffering due to the unrelenting burning nerve pain & damages, w/sleep deprivation, daily life function impairment via cognitive disabilities, mobility impairment, and rage.

Plaintiff contends that defendants "Secretary of CDCR and HDSP personnel were deliberately indifferent to my serious medical needs, denied me due process of law & equal protection of the law" by contracting with Banner, "a substandard facility," and its employees Drs. Syverson and Schwartz, "who both have substandard medical care histories;" and by "allow[ing] Dr. Rolfing, a known mentally unstable doctor with a known history of causing harm to CDCR inmates," to be assigned plaintiff's surgical aftercare at HDSP.[1] ECF No. 15 at 6.

---

[1] Review of the California Medical Board's license website indicates there has been no disciplinary action against Dr. Syverson; Dr. Schwartz surrendered his license in September 2016 to resolve a disciplinary matter; and Dr. Rolfing's license is current after he completed a term of discipline in February 2002. See https://search.dca.ca.gov/?BD=800&TP=8002. This Court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201; see City of Sausalito v. O'Neill, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not

1    Plaintiff contends that "[t]he CDCR Secretary & HDSP personnel were deliberately indifferent to

2    my serious medical needs when they reinstated a mentally unstable, dangerous doctor who they

3    knew was such, to practice medicine on B-Yard, and this was the direct cause of my permanent

4    injuries and suffering. . . ." [2] Id. at 5.  Plaintiff also contends that defendant Banner "maintain[ed]

5    known defective medical/surgical devices in their medical supplies for use on plaintiff and other

6    CDCR inmates . . . which Banner  . . . officials knew or should have known were defective," and

7    the implantation of these devices in plaintiff was "the direct cause of plaintiff's initial injuries and

8    infections."  Id. at 7.  Plaintiff also generally contends that these defendants are also "liable under

9    California state negligence, tort, laws, as well."  Id. at 5, see also id. at 7 ("violated California

10   state negligence, medical negligence & malpractice, and tort laws").

11          Plaintiff seeks one million dollars compensatory damages, and one million dollars

12   punitive damages, from each defendant, as well as costs and attorney fees.[3]  Id. at 9.

13          **C.      Analysis**

14                  **1.    Deliberate Indifference to Serious Medical Needs Claims**

15          The court finds plaintiff's allegations against defendant Rolfing sufficient to state a

16   cognizable Eighth Amendment claim for deliberate indifference to plaintiff's serious medical

17   needs.  Specifically, a viable claim is stated by the allegations that Dr. Rolfing knowingly refused

18

19   subject to reasonable dispute.").

20   [2]  Plaintiff alleges more specifically, ECF No. 15 at 5:
             Doctor Rolfing had been fired for allegations of substandard
21           medical care and injuring inmates with allegations of at least 1
             death.  Dr. Rolfing was fired by the CDCR, the State Personnel
22           Board reinstated Rolfing, and CDCR had Rolfing sort mail for 2
             years, refusing to reinstate his clinicians license to practice
23           medication.  In 2013 CDCR allowed Rolfing to practice medicine
             on B-Yard, HDSP, knowing he was unfit to practice medicine, and
24           after CDCR had stated they wouldn't reinstate his clinicians license
             because he harmed too many inmates.
25

26   [3]  Plaintiff's request for injunctive relief is too sweeping to be cognizable.  He seeks "injunctive
     relief restraining CDCR & employees [&] agents from hiring or contracting with any medical
27   facility or medical provider without first ensuring that said contracted agents were competent to
     provide the treatment & care in accord with the US Const. Amdt 8 mandates, and all requirements
28   of California state laws."  ECF No. 15 at 9.

1  to treat plaintiff's open, pus-filled surgical site, resulting in a prolonged infection of the site,

2  scarring, and chronic pain.  See Farmer v. Brennan, 511 U.S. 825, 845, 847 (1994) (a prison

3  official acts with deliberate indifference if "he knows that inmates face a substantial risk of

4  serious harm and disregards that risk by failing to take reasonable measures to abate it").

5  Although further development of the facts may show that plaintiff's decision to "self care"

6  deprived Dr. Rolfing of a reasonable opportunity to assess the seriousness of plaintiff's medical

7  needs and/or to treat those needs, the allegations as framed are sufficient to state an Eighth

8  Amendment deliberate indifference claim against Rolfing.

9  ### 2.  **State Law Medical Negligence Claims**

10  To state a cognizable negligence claim, plaintiff must allege that a defendant owed him a

11  legal duty and breached that duty, and that defendant's breach was a proximate or legal cause of

12  plaintiff's injuries.  Merrill v. Navegar, Inc., 26 Cal. 4th 465, 477 (2001)).[4]  "Because application

13  of this principle is inherently situational, the amount of care deemed reasonable in any particular

14  case will vary, while at the same time the standard of conduct itself remains constant, i.e., due

15  care commensurate with the risk posed by the conduct taking into consideration all relevant

16  circumstances."  Flowers v. Torrance Memorial Hosp. Med. Ctr., 8 Cal. 4th 992, 997 (1994)

17  (citations omitted).  "The standard of care against which the acts of a physician are to be

18  measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a

19  malpractice action and can only be proved by their testimony, unless the conduct required by the

20  particular circumstances is within the common knowledge of the layman.'"  Id. at 1001 (citations,

21  internal quotation marks and punctuation omitted).  Similarly, a "hospital owes its patients the

22  duty of protection, and must exercise such reasonable care toward a patient as his known

23

24  [4] "The existence and scope of duty are legal questions for the court.  In determining those
    questions, we 'begin always with the command of . . . [California Civil Code] section 1714,
25  subdivision (a):  "Everyone is responsible, not only for the result of his willful acts, but also for
    an injury occasioned to another by his want of ordinary care  or skill in the management of his
26  property or person. . . .""  Merrill,  26 Cal. 4th at 477 (case citations omitted).  "Legal duties are
27  not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular
    type, liability should be imposed for damage done."  Id. (citation and internal quotation marks
28  omitted).

condition may require," including "to insure the competence of its medical staff through careful selection and review." Elam v. College Park Hosp., 132 Cal. App. 3d 332, 341 (Ct. App. 1982) (citations and internal quotation marks omitted).

In the instant case, it is not possible at this stage of the proceedings to ascertain the extent to which defendant physicians Syverson and Schwartz, and defendant Banner-Lassen Medical Center, had prior knowledge or experience concerning the risks of using the subject Bard-Davol products. Nevertheless, for screening purposes, the court finds the allegations of plaintiff's FAC sufficient to state cognizable state law medical negligence claims against defendant Banner-Lassen Medical Center and defendant Banner physicians Syverson and Schwartz. Specifically, a viable claim is supported by the allegations that these defendants "knew or should have known" that the subject Bard-Davol products were defective but nevertheless endorsed (or offered, authorized, recommended, and/or implanted) the products, thus breaching their duty of care to plaintiff.[5]

### 3. No Cognizable Claim Against Other Putative Defendants

Plaintiff broadly alleges that the "Secretary of CDCR and HDSP personnel were deliberately indifferent to my serious medical needs, denied me due process of law & equal protection of the law" by contracting with Banner-Lassen Medical Center to provide plaintiff's medical care. ECF No. 15 at 6.

The Eleventh Amendment bars suits against CDCR as an entity. See Alabama v. Pugh, 438 U.S. 781, 782 (1978) ("suit against the State and its Board of Corrections is barred by the Eleventh Amendment"); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) ("The Nevada Department of Prisons, as a state agency, clearly was immune from suit under the Eleventh Amendment.") (citing Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89, 100 (1984)).

On the other hand, a claim for prospective injunctive relief against a state official in his

---

[5] As currently framed, plaintiff's allegations do not state cognizable claims against these defendants for deliberate indifference to plaintiff's serious medical needs. However, should the evidence support such claims upon further development of the record, the court will reconsider this matter. A private physician or hospital that contracts with a public prison system to provide treatment for inmates performs a public function and acts under color of law for purposes of Section 1983. West v. Atkins, 487 U.S. 42, 56 n.15 (1988).

1  official capacity is not barred by the Eleventh Amendment provided the official has authority to

2  implement the requested relief.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 92 (1989).

3  In the present case, however, the wide-ranging injunctive relief sought by plaintiff, see n.3, supra,

4  cannot reasonably be implemented by the CDCR Secretary.  Therefore, the CDCR Secretary

5  (identified in the FAC as "Secretary John Doe") should be dismissed from this action.

6           Similarly, the designation "HDSP personnel" is too broad to identify appropriate

7  defendants, because liability requires an alleged affirmative connection between the conduct

8  challenged and specifically identified defendants.  See Rizzo v. Goode, 423 U.S. 362, 371 (1976);

9  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  The same linkage requirement applies to

10  potential supervisorial defendants, who are only liable if personally involved in the alleged

11  constitutional violation or if the factual allegations establish a "sufficient causal connection

12  between the supervisor's wrongful conduct and the constitutional violation."  Hansen v. Black,

13  885 F.2d 642, 646 (9th Cir. 1989) (citation omitted).  Although supervisory liability may exist "if

14  supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of

15  constitutional rights' and is 'the moving force of the constitutional violation,'"  Id. (quoting

16  Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987), the instant FAC does not make such

17  allegations.

18      **IV.    Conclusion**

19           In accordance with the above, IT IS HEREBY ORDERED that:

20           1.  Service of process of the FAC is appropriate for defendants Rolfing, Syverson,

21  Schwartz, and Banner-Lassen Medical Center.[6]

22           2.  The Clerk of the Court is directed to send plaintiff four USM-285 forms, one

23  summons, an instruction sheet, and one copy of the endorsed FAC (ECF No. 15).

24           3.  Within thirty (30) days after service of this order, plaintiff shall complete the attached

25  Notice of Submission of Documents and submit the following documents to the court:

26

27  [6] Plaintiff currently identifies defendant "Director/CEO John/Jane Doe Banner-Lassen Medical
    Center."  To effect service of process on Banner-Lassen Medical Center plaintiff must identify
28  the appropriate agent for service of process.

1              a. The completed Notice of Submission of Documents;

2              b. One completed summons;

3              c. One completed USM-285 form for each defendant identified in Paragraph 1

4      above; and

5              d. Five copies of the endorsed FAC (the U.S. Marshal will retain one copy).

6          4. Plaintiff shall not attempt service on any defendant or request waiver of service. Upon

7      receipt of the above-described documents, the court will direct the United States Marshal to serve

8      the above-named defendant pursuant to Federal Rule of Civil Procedure 4 without payment of

9      costs.

10         5. Failure of plaintiff to timely comply with this order will result in the dismissal of this

11     action without prejudice.

12         6. The Clerk of Court is directed to randomly assign a district judge to this action.

13         Additionally, for the reasons set forth above, IT IS HEREBY RECOMMENDED that

14     defendant "John Doe" Secretary of the California Department of Corrections and Rehabilitation

15     be dismissed from this action with prejudice.

16         These findings and recommendations are submitted to the United States District Judge

17     assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14)

18     days after being served with these findings and recommendations, any party may file written

19     objections with the court and serve a copy on all parties. Such a document should be captioned

20     "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that

21     failure to file objections within the specified time may waive the right to appeal the District

22     Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

23     DATED: August 22, 2019

24     _____

      ALLISON CLAIRE

25           UNITED STATES MAGISTRATE JUDGE

26

27

28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN GRESCHNER, | No. 2:15-cv-1663 AC P |
| Plaintiff, | |
| v. | NOTICE OF SUBMISSION |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al., | |
| Defendants. | |

Plaintiff submits the following documents in compliance with the court's order filed

_____:

_____      one completed summons form

_____      four completed USM-285 forms

_____      five copies of the endorsed FAC

_____      _____
Date      Plaintiff

10